Sutton v. Wal-Mart. Mr. Parrish. Good morning. May it please the court, Chief Judge Pryor, Philip Parrish, on behalf of the appellant Vanessa Sutton. We're here today on de novo review of a summary judgment in a Florida foreign substance with a ball case. Right. Never thought I'd find one so interesting. Okay. Good to hear. I think. I hope. So, uh, so, um, we, it's our position that, uh, just on the basis of the pictures that Wal-Mart produced in the case there at DE 41-3 and the plaintiff's testimony that under a longstanding Florida law dating back at least to 1973 with the Montgomery decision that we have evidence, uh, of a piece, a piece of fruit, um, a grape in front of the grape bin, uh, that it's been cleaved in half, has the testimonies that had dirt in it. Um, there's the picture show and testimony to plaintiff is that there was a liquid, that there's a, you can see the track mark going through the second picture. It's a, it's a very long, uh, from a, from a buggy, you know, a shopping cart and the law in Florida has always been, uh, whether dealing with, uh. Let me tell you where I am and this is a friendly question. So, it seems to me, you know, if you watch the video, I don't know what could have not, uh, grape loose to fall on the floor where your client fell, um, in the 20 minutes leading up to that incident or certainly 15 to 20 minutes. And that to me allows a reasonable inference that it was already there. And if it was already there for that amount of time, then that seems to allow the jury to find constructive notice. I wholeheartedly agree with that. I think there's evidence here that really turns on that, doesn't it? Isn't that what this case turns on? Well, I think it's several things. It's, it's, it's the fact that there's no inspection. The video is an hour prior to the incident and there's nobody who's inspecting that. I mean, it only requires, what, 15, 20 minutes for there to be constructive notice, right? Correct. And that goes, I think, goes back to the Montgomery case as well and, and, and that there've been cases in this court, uh, and in the Maritime and in the, uh, Landsite, uh, slip and fall cases. I don't know how, I don't know how applicable Maritime cases are. This is a Florida case, right? This is diversity. Absolutely. Uh, but in any event, the, both the evidence of, um, of no inspection or they're shown in the video, uh, for the hour before the fall, uh, and the... Hold on. We have the testimony of Aurelius that he walked through the produce section 10 minutes before the incident. His testimony is unambiguous. Hold aside the video. That's what he says, right? That's what he says. Now keep in mind both Aurelius and Roberts were deposed and then about six months later when the motion's filed, there's a declaration where they say that they didn't see anything. But if you look at the portion of the video where... Oh, I'm just saying there's evidence that somebody, if you believe them, walked through 10 minutes before and said, I saw nothing. Right. Again, that's contrary evidence, which is what jury trials are made for, but it's... Oh, I understand. Right. So in the video, he walks through there very quickly and he does not appear to be looking at the ground at all. He appears to be looking straight ahead, uh, and, and, and he's walking quickly through. So the video at page 235, 21 PM, that's 235 and 21 seconds is where he's walking through. He's, he does it quickly, does not appear to be making any kind of inspection. So, uh, and again, he didn't remember much of anything about the incident in his deposition. Six months later, we get a declaration that says at this point in the video, I walked through and I didn't see anything, but in the event that that's at best, you know, some, some evidence that they could present if it's believed by a jury on their side of the ledger. But if you take the fact that there's no inspection, you take the fact that the, uh, grape appears to be deteriorated, you take the testimony of the plaintiff, that there's a track mark through it, and the pictures that show a track mark through it, this, uh, to me is a classic case for... Does the... Help me with this picture. Um, I remember the testimony of your client was, A, there was a grape, I saw it was crushed, it was dirty, B, there was liquid, C, there were track marks, and D, there were footprints. At one point she says there was a footprint, and at another point she says there were footprints, multiple footprints. Does the picture show footprints? So the picture, which is taken after... You're talking about what you, you just made, you made reference to docket entry 41-B, I think it was. It's 41-3, and there are eight separate pictures. So the pictures clearly depict the cart track, and whether or not there's a, um, a footprint there is subject to, I think, dispute by reasonable persons, but again, that's a jury issue. And that picture... No, no, I'm just asking a really simple question. Right. Whether it was there or not, she says it was there. Yes, of course. That's enough to establish, if you believe her, there was a footprint. My question is, does, do any of the eight pictures actually reflect a footprint or footprints beyond... You've already commented about the tracks. So, it's hard to say, Judge. And they were taken after it was wiped up, so we don't know what was wiped up with the paper towel. But, but she said that there were, and there's no, there's no definitive photographic evidence that there were not. There's, some of the photos have a roundish area, and the track mark going through that roundish area could be a, a track mark, or a series of track marks, or a smudge. We don't know for sure, but it was her testimony that there was a footprint track there. Subsequently, the area is wiped up, and then the pictures are taken. So, I cannot definitively tell you that that's a footprint in the picture, but, but I think a reasonable jury could conclude that it was, or believe Ms. Sutton, that that's what she saw before the liquid portion was wiped up. There are no further... Isn't it undisputed that those pictures were taken 25 minutes later, after many customers have walked through the area? Well, I don't know how many actually walked through there, but they were taken, in fact, taken 25 minutes later. Yes, after the area's been wiped up. So, that doesn't, I think, bear too much on what it looked like when she slipped. Well, it, you know, it is a picture of the area that the, Walmart certainly thought it was important because the manager came out and took photographs of that, put his name tag down by it to show that this was, you know, the grape that, the stain left from the grape that was slipped on and, you know, kept on one of the paper towels, not thrown away, but kept on the paper towel is the two pieces of the grape. So, I think it is some evidence. The fact that the pictures were taken some minutes later would simply go to the weight of that evidence, I suppose. But at this point, we have direct testimony from the plaintiff that she saw the footprint. We do not have definitive evidence and we don't need definitive evidence to decide just for them to, you know, there just is no definitive evidence on the other side that there wasn't a footprint there. And the pictures definitely show a messy area there and they're taken after it's cleaned up. So, with all of that, we certainly have much more than is necessary to defeat a summary judgment under longstanding Florida law, going back to the Montgomery case, the Owens case, at least that portion that was, you know, was based upon prior Florida law and not the plaintiff, the burden to the defendant. So, it's hard to say anything about the rubber mat policy. So, there's also testimony in the case that, and a policy, a written policy that in areas where there are, you know, cherries and grapes, that there should be mats. We believe that that establishes either constructive, I can't say actual because we conceded below that we weren't moving on actual notice, but it could be constructive notice. I mean, they certainly, the testimony was, yes, we know that grapes can fall to the floor. Ms. Roberts said, look, you know, even though they try to say that they're in containers or in bags, but they know that the customers open them up and taste them. And if you've seen what a container of grapes costs these days, you can kind of understand that. But in any event, they know that grapes go to ground and they do have a policy that it bends in front of... It wasn't a mat here, right? It was not a mat. Any further questions? Nope. I'll save my, rest of my time. Well, I'll just wait. Okay. You've saved some time for rebuttal. Mr. DiBello. Good morning. May it please the court, Darren DiBello on behalf of Walmart Store East LP. Your Honor, please the court. It's very telling that the piece of evidence that the plaintiff points to in arguing to court are the photographs. And it's very telling of that because that is the reaching for straws aspect of the plaintiff's case, which the district court in reviewing all of the evidence that was put forth correctly found summary judgment was appropriate here. Well, regrettably, I watched a half, at least half an hour of video that suggested to me that a jury could reasonably infer that the grape was there 15, 20 minutes before the fall and Walmart would have constructive notice of it. I know Orlis testified, walks through this area like 10 minutes, but also walks by a customer who could have blocked his vision. Correct. Although arguably again, though, at that point, he only crosses that customer at the point. He has to walk through that area. Right. If I were to walk forward here toward that television, I can see the ground in front of me. That person that blocks him, he only crossed paths at the point of the television. So in his field of vision, as he walks through that aisle. I just don't understand why this isn't a jury issue. Because, Your Honor, the plaintiff bears the burden under the Flores statute to establish evidence that the condition existed for a sufficient amount of time. It is not Walmart's burden. How could it have otherwise been there? I mean, it, yeah. I can't answer that question, Your Honor. All right. It could have been there from at 2.3559 when an older couple with a cart walked directly over that area, could have fallen from their cart. At 2.3659. And again, knowing that the time of incident is 2.45. It would be helpful to me to know within. 10 minutes. Within 10 minutes of the incident. What I would say is, Your Honor, and I could quickly. I didn't see anyone walking in that area within 10 minutes. I specifically reviewed the video yesterday to be able to point out to the court that from the time period after Mr. Orlis walks through and undisputedly says, I saw nothing on the floor at that time. I would also note that there is testimony in the record that Walmart employees are all trained that if you do see something, you pick it up. So the concept of him walking through an area and not paying attention would be countered with the evidence. Having said that, at the 2.3521 mark, where he walks down that aisle directly over the spot and says, I didn't see anything. In the intervening 10 minutes from there to the time of the slip. And I can cite the citations, but it's easier if you just watch the 10 minutes. But there is an older couple with a cart that walks directly over the area, a shopping cart. There is a woman with a bag that walks directly over the area. There is another lady with a shopping cart. This is at 2.3932 that walks over the area. There's also a child playing in the area at around the 2.40 to 2.42 mark, in which the child is actually swinging. She never walks up that aisle, but she's in the area. If you watch the video, she's got a bag and she swings it. At one point, she throws the bag and it lands at the beginning of that aisle, if you will. And then there is also a 2.4215, so 10 seconds before the incident, a couple with a shopping cart walk through. And although I've been at the court and asked the question, well, I didn't see anything where someone would have dislodged it, a grape from the rack. It is speculation that that's how this occurred. It could very easily have just as well been someone walking through one of the people that fell from their cart. I guess the way I should have phrased it is, I didn't see anything that would suggest to me that when that person was in what you call the area, that whatever they did could have led to a grape being on the spot where the plaintiff fell. But the point is, Your Honor, it is the plaintiff's burden to establish that under the statute. Let me ask the question this way, Mr. DiBello. Let's hold aside for a moment what inferences a jury might reasonably draw from the video. We have the unambiguous testimony of the victim plaintiff who says the following. She says, not only was there a crushed grape on the floor, not only was there liquid on the floor, there were track marks on the floor too. And beyond all of that, there were footprints. At one point, she says singularly a footprint. At another point, she puts it in the plural and says footprints. If that is to be credited by a jury, isn't that enough to establish the requirements of constructive knowledge? No, Your Honor, because the fact, well, first off, I will just point out, it's important that she said one footprint in her initial testimony and then acknowledged that that said footprint she was referring to was hers. Might have been hers. But then she said multiple at a later point. Understood, Your Honor. But the point being is that she testified there is testimony where she says the one footprint she saw was hers. She testified she saw a single purple grape and she testified she saw some juice. The reason that under the Florida statute, the mirror. But you left out perhaps the most critical observation she claims to have seen. Two, it tracks. Tracks in and of themselves where the video establishes that people walk through the area directly over this area in one, two, as a kind of five different people with shopping carts walking directly over this area within the 10 minute. The reason I raise it is when I went through the DCA cases and there are a whole bunch of them, when they generally grant summary judgment, the courts say, oh, and by the way, folks, there were no track marks. There were no footprints, et cetera, et cetera, suggesting the obverse proposition that if indeed there were track marks and there were footprints, you would have a jury kind of question here. We don't have a great case with track marks and footprints. But we have other character of produce on the floor with track marks and footprints. And the courts have said track marks and footprints yield the reasonable inference that it was there for a sufficiently long period of time to infer constructive knowledge. That's what these cases seem to say. Have I misapprehended these cases? I believe what those cases say, Your Honor, is that track marks can be an indicia, which can infer constructive notice. But under the circumstances of this case, where the video shows the, if she, if the plaintiff were to testify, she saw five sets of track marks through there. The evidence establishes that we have the video showing people, we have five sets of people walking through there. What you're saying to me is the best evidence here is the video and the video absolutely controverts what she said and therefore no reasonable juror could draw the inference from her testimony. That's your argument, right? No, because I will say this. And I'm, I'm lost. I don't understand. Because I'm not even saying the video controverts what she is saying. I'm saying the video in a way supports what she is saying. She's saying she saw track marks. If in fact that is true, the video shows those track marks occurred during or could have occurred during the 10 minute period. And if it's only operative, isn't the operative verb that you just used could have. But isn't that the critical question here? Correct. The temporality of when the track marks occurred. And that is why track marks matter, Your Honor, because the only thing track marks are indicative of is temporal. And that's why there's always a question of whether the track marks were dirty or not, or whether the substance had dried, whether the substance was hot or cool. All of these indicia of whatever evidence there is in that particular case. That would suggest that was there before to the tracks, right? Yes. And so what you have is what does the evidence show in this case with plaintiff bearing the for a long enough time to place Walmart on notice. The evidence of record establishes undisputed testimony that when the employment. It was when you were talking about passing through the area within the shorter time frame, if they're creating tracks because the grapes already there, that means the grape was there longer. It means it was there during the 10 minutes, Your Honor, because we have Mr. Orlis testifying at the 10 minute mark. We have to credit him that he saw everything that could have been seen. And by looking at the video, we're to say that indisputably establishes that if there was a grape, he would have necessarily seen it. His testimony is undisputed, Your Honor. And in watching the video, he walks up the aisle. There's nothing blocking his vision. It sounds like a good jury argument. That doesn't sound like summary judgment. But the point is, is that under the statute, it is no longer Walmart's burden to prove how long it was there. It is the plaintiff's burden to prove how long it was there. And that time period that they can establish is sufficient time to put Walmart on destructive notice. And what we have here is that plaintiff is admitting that they cannot establish how long it was there. And they're not meeting their burden. And what Walmart is doing is, and what they presented to the district court, is look at the evidence in this case. And when you take those four pieces of evidence, Mr. Orlus' testimony that 10 minutes before he didn't see anything when he walked through the aisle, Ms. Roberts' testimony that when she cleaned up, she was right there. She came over, she cleaned up immediately. It was one grape and a little bit of grape juice she cleaned up. The plaintiff's testimony that there was initially, she has one footprint, which was hers and some juice. And she says it was one purple grape. And then she says there were tracks. She hasn't testified that there were 27 tracks, which we could explain that my explanation, which I don't bear the burden of, but our explanation of if in fact she's telling the truth that she saw multiple footprints. It sounds to me that that's a pretty good argument to tell a jury about why the testimony about the track marks ought to be discounted. As opposed to saying the presence of track marks is an indicia of the temporality requirement being met. But what the purpose of summary judgment, Your Honor, is for the court to be able to The plaintiff has a video and her own testimony. Her own testimony, which Judge Marcus has recounted, and you watch the video and credit that testimony. And it seems to me that a juror could reasonably infer that notwithstanding all the people you say are going through the area and the 10 minutes before, that there's nothing to within the 15 to 20 minutes beforehand. And therefore, Walmart would have had a constructive notice that that's at least one reasonable inference. But that doesn't raise to her level of burden, Your Honor. And by the way, her own testimony, and she's got the video. Why doesn't that enough to satisfy the jury, the burden to at least get to the jury? Because the burden that she's she's admitting she cannot prove how long it was there. She can't. If she has to have evidence that it had to have been at least a certain amount of time to have given Walmart constructive note, that is the burden she bears. And the video is not me just saying, referring to the area. I would ask the court to please look at the 10 minutes I'm referring to. And the citations that I've given you of people, there are people literally walking directly at the same over the same spot. Let me let me read to you something the third DCA wrote. In a Winn-Dixie case, Woods v. Winn-Dixie, and you help me with it. Third DCA writes, and I quote, constructive notice of a dangerous condition is shown by evidence that the condition existed for such a length of time that a party exercising ordinary care should have known of it. The length of time the condition existed can be proven by circumstantial evidence. Testimony of dirt, scuffing, or tracks in a substance generates sufficient inferences of constructive notice. His argument is that's what you've got here. His argument is predicated on, as Chief Judge Pryor said, the video and Sutton's testimony. Why doesn't this go to a jury? What am I misapprehending about Florida law? I know he's got the burden. Nobody disputes that. And I know Florida legislature meant to impose a more difficult burden upon him. He simply said, I met it this way. What am I missing? Is that he cannot tell you how long the product, the grape was on the floor, Your Honor. I don't have to tell you exactly how long. What he has to do is create enough of a fact pattern from which the jury could circumstantially infer that it was there long enough. And I would posit in response to that point, Your Honor, is that in the case that you cited from that third DCA, there was not a video showing five different people walking over the exact same spot, creating the very track marks that she couldn't see. My problem is I've watched the video. I think a juror, and I'll watch it again, but I think a juror could reasonably infer that none of those could have led to that grape being there. And my only response, Your Honor, is that you said at the outset, I think in your concept of it, you were thinking, well, you'd be looking for someone for the grape to fall from the cart itself. And our point is that people have things in their cart. Things fall from people's carts. And so they go quickly through there and no stopping, nothing to suggest, no bumping, nothing to suggest that they could have caused the grape to be there. That at least looks to me like a jury question. But we've heard your argument. Thank you. I love looking at it. I know. And I ask you just one very, very quick question. Please just look at the girl that tosses the bag. You'd be surprised. Yes, Your Honor. Is there anything to be drawn from the absence of a mat? No, Your Honor. In fact, case law is one of the things the statute was seeking to accomplish, and we cite this in our briefs, so I won't go into it, is that that gets into the negligent mode of operation, in which that, oh, by having certain safety standards and the store's adherence or not adherence to those standards can be used as evidence to establish constructive notice. And there is case law that says that that does not apply. Your company admits it has that policy, that rubber mat policy, to prevent the very problem that we're dealing with here. And there is not a mat there. That issue does not, as a matter of law, though, go to whether they were on constructive notice as to this occurrence, Your Honor. And the case law establishes that. The statute is specifically done so that there's a plethora of case law, and you're going to see all of that case law is prior to, I want to say, 2015 and 18, when the statute was, 2015, when the statute was revised, because it takes that issue. The issue is no longer was safe, were safety policies complied with or not under a negligent standard. The issue is- Let me ask the question this way. If you get to a trial and he offers evidence that A, you had a policy about mats, and B, you didn't have a mat on the floor at the time, and you move to strike it on the grounds that it is irrelevant, would it have been irrelevant? Absolutely. It would have no relevance whatsoever. Absolutely. And our position would be to file a- To the exercise of care on your part. To the, irrelevant to the issue of whether we're on constructive notice. No, but it might be relevant otherwise to care. It may be, but that's not the issue before. The ruling was based on whether we're on constructive notice or not. I've got it. Negligence or not. Thanks very much. Thank you very much for your time. Mr. Parrish, is there anything you want to say in your last five minutes? I don't think I need to, but- Sometimes less is more, Mr. Parrish. Rather than snatching the feed from the jaws of victory, I'll just say we ask for the court to reverse. Thank you, Mr. Parrish. We'll be in recess until tomorrow.